

# UNITED STATES DISTRICT COURT

for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Black Samsung Cellular Phone, FCC ID
A3LSMJ327T, IMEI 355603/08/881586/7

)
)
)
)
)

Case No.

**17MJ369**

FILED

OCT 4 2017

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A (incorporated herein)

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 952, 960, 963 | Importation of a Controlled Substance |

The application is based on these facts:
See Affidavit of Grant Carter (incorporated herein)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

HSI Special Agent Timothy O'Sullivan
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _10-4-17_

_____
*Judge's signature*

City and state: San Diego, CA

Hon. Nita L. Stormes, U.S. Magistrate Judge
_____
*Printed name and title*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

IN THE MATTER OF THE SEARCH OF

Black Samsung Cellular Phone, FCC ID
A3LSMJ327T, IMEI 355603/08/881586/7

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A
SEARCH WARRANT**

I, Timothy F. O'Sullivan, Special Agent with the United States Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), having been duly sworn, state as follows:

## INTRODUCTION

1.     This affidavit is made in support of an application for a warrant to search: A black Samsung cellular phone, FCC ID A3LSMJ327T, IMEI 355603/08/881586/7 (hereinafter "Target Telephone") seized from Brian Carl WALDROP (hereinafter "WALDROP"), as more particularly described in Attachment A.

2.     Target Telephone was seized from WALDROP on or about July 10, 2017 at about the time of his arrest.  It is believed that Target Telephone was used by WALDROP to communicate with co-conspirators during a drug smuggling event on July 10, 2017. WALDROP has been charged with importation of 10.24 kilograms of methamphetamine and 2.078 kilograms of heroin, and 315.8 grams of fentanyl in the Southern District of California.  Probable cause exists to believe that Target Telephone contains evidence relating to violations of Title 21, United States Code Sections 952 and 960.  Target Telephone is currently in the possession of the Department of Homeland Security, Homeland Security Investigations (HSI), Deputy Special Agent in Charge, located at 2255 Niels Bohr Ct. San Diego, California, 92154.

3.      Based on the information below, there is probable cause to believe that a search of Target Telephone will produce evidence of the aforementioned crimes, as described in Attachment B.

4.      This affidavit is based upon information I have gained through training and experience, as well as upon information related to me by other individuals, including law enforcement officers. In preparation of this affidavit, I have discussed the facts of this case with other law enforcement agents and officers within the Department of Homeland Security. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known concerning this investigation but have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence relating to violations of Title 21, United States Code, Sections 952 and 960, described in Attachment B, is located on the cellular phone described in Attachment A.

## EXPERIENCE AND TRAINING

5.      I am a Special Agent (SA) with Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and have been so employed since November 2010. I am currently assigned to the Deputy Special Agent in Charge (DSAC), San Ysidro Office, Contraband Smuggling Group 2, and my duties include investigating the trafficking of illicit controlled substances; and, the importation and distribution of illegal substances. I have training and experience in multiple investigative areas, to include conducting investigations and make arrests based on violations of Title 21, United States Code.

6.      Prior to my current assignment with the Contraband Smuggling Group 2, I was assigned to the Cargo Based Smuggling Group for approximately two (2) years and the San Diego Tunnel Task Force for approximately four (4) years.

7.      I have had approximately twenty-three (23) weeks of intensive training at the Federal Law Enforcement Training Center ("FLETC") at Glynco, Georgia. These twenty-three (23) weeks comprised of approximately twelve (12) weeks of the basic criminal investigator training program, and approximately eleven (11) weeks of ICE Special Agent

Training. I have received training in identifying various controlled substances and conducting Title 21 controlled substances investigations. Prior to working for HSI, I worked for the Federal Air Marshal Service, Special Agent in Charge (SAC), Boston Field Office, for approximately eight (8) years and six (6) months. My duties with Federal Air Marshal Service, Special Agent in Charge (SAC), Boston Field Office were to detect, deter, and defeat criminal and terrorist activities that target our Nation's transportation systems

8.    I have personally participated in and conducted investigations of violations of various State and Federal criminal laws, including those related to narcotics violations. I have arrested or participated in the arrest of persons for violations of the Controlled Substances Act. In these cases, I have conducted interviews with the arrested persons and their associates. I have conducted surveillance of narcotics smugglers as they conduct their smuggling activity while crossing the border from Mexico into the United States. Through these investigative activities, I have gained a working knowledge and insight into the typical activity of narcotics smugglers, and the structure of their narcotics smuggling networks.

9.    I have also spoken with other agents about their experiences and the results of their investigations and interviews. I have become knowledgeable of the methods and modes of narcotics operations. I have become familiar with the methods of operation typically used by narcotics traffickers. I know that narcotics traffickers often require the use of one or more telephone facilities to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing, and distributing controlled substances and for arranging the disposition of proceeds from the sale of controlled substances. Based on my training and experience, I know that load drivers smuggling controlled substances across the border are often in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances. Moreover, I know that professional narcotic operations depend upon maintaining extensive contacts. The use of telephones is essential in maintaining timely long-distance and local contacts with the

3

original suppliers and those down the organizational chain to the local traffickers. The telephone enables narcotics dealers to maintain contact with narcotics associates, narcotics suppliers, and narcotics customers. I also know that narcotics traffickers often use fraudulent information to subscribe communication facilities, especially cellular telephones, and frequently change communications facilities to thwart law enforcement efforts to intercept their communications.

10.     In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

11.     Based upon my training and experience, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a.    Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b.    Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c.    Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d.    Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    e.    Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

4

f.    Drug smugglers and their co-conspirators often use cellular telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

## STATEMENT OF PROBABLE CAUSE

12.    On July 10, 2017, at approximately 6:48 p.m., WALDROP drove a 2003 Jaguar S-Type, bearing a California license plate, 4ZED800, to the San Ysidro Port of Entry, and applied for entry into the United States.   According to WALDROP, the vehicle was registered in his name on July 6, 2017.

13.    A Customs and Border Protection ("CBP") Officer queried WALDROP and found that WALDROP had purchased the Jaguar S-Type after his previous car had been repossessed. He had driven to Mexico two days prior and was now driving back to Oceanside.  Additionally, the CBP Officer noticed the vehicle was abnormally clean on the outside and did not contain any personal effects except one jacket. The CBP Officer also looked in the trunk and observed an air freshener, loose bolts, a hole the size of a drill bit above the tire well, and a built in non-factory compartment. The CBP Officer then called for assistance.

14.    Another CBP Officer then arrived with his HNDD Canine. The CBP/K9 alerted to the rear wheel well of the vehicle and indicated by sitting by the rear passenger side rear tire while maintaining a pin point stare.

15.    During the secondary inspection, the CBP Officer removed the floor covering/carpeting from the trunk area and observed a small hole in the metal located near the rear seats above the spare tire wheel well. The CBP Officer also observed an air freshener located near the area where the hole was discovered. The CBP Officer used a fiber optic scope to see inside the hole and saw yellow strings and a black package. Once opened, the CBP Officer discovered a non-factory compartment inside the trunk area, filled with packages wrapped in black carbon paper and tape. Twenty-three of the packages were filled with a white crystal like substance, which tested positive for methamphetamine. Three of the packages contained a sticky substance that tested positive for heroin.

5

16.    At the time of WALDROP's arrest, the CBP officers seized Target Telephone from him as evidence.

17.    Based upon my experience and investigation in this case, I believe that WALDROP, as well as other persons, was involved in an on-going conspiracy to import, transport, possess, and distribute heroin and methamphetamine throughout the State of California. Based on my experience investigating narcotics smugglers, I also believe that WALDROP used Target Telephone to coordinate with co-conspirators regarding the transportation and delivery of the heroin and methamphetamine and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, phone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of electronic devices described herein, which identify other persons involved in narcotics trafficking activities.

18.    Based upon my experience and training, as well as WALDROP's crossing records, which indicate that he has crossed from Mexico into the United States nearly every day since September 29, 2016, I believe that evidence exists on the Target Telephone dating back to September 29, 2016. I respectfully request permission to search the Target Telephone for data beginning on January 1, 2017 up to and including July 10, 2017.

19.    Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the heroin and methamphetamine smuggling of WALDROP, and co-conspirators, such as phone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the electronic devices described herein.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO THE CELLULAR TELEPHONE

20.    It is not possible to determine, merely by knowing the cellular telephone's make, FCC, and IMEI the nature and types of services to which the device is subscribed and the

1  nature of the data stored on the device. Cellular devices today can be simple cellular
2  telephones and text message devices, can include cameras, can serve as personal digital
3  assistants and have functions such as calendars and full address books and can be mini-
4  computers allowing for electronic mail services, web services and rudimentary word
5  processing. An increasing number of cellular service providers now allow for their
6  subscribers to access their device over the internet and remotely destroy all of the data
7  contained on the device. For that reason, the device may only be powered in a secure
8  environment or, if possible, started in "flight mode" which disables access to the network.
9  Unlike typical computers, many cellular telephones do not have hard drives or hard drive
10 equivalents and store information in volatile memory within the device or in memory cards
11 inserted into the device. Current technology provides some solutions for acquiring some
12 of the data stored in some cellular telephone models using forensic hardware and software.
13 Even if some of the stored information on the device may be acquired forensically, not all
14 of the data subject to seizure may be so acquired. For devices that are not subject to
15 forensic data acquisition or that have potentially relevant data stored that is not subject to
16 such acquisition, the examiner must inspect the device manually and record the process
17 and the results using digital photography. This process is time and labor intensive and may
18 take weeks or longer.

19 21.    Following the issuance of this warrant, I will collect the Target Telephone and
20 subject it to analysis. All forensic analysis of the data contained within the telephone and
21 its memory card will employ search protocols directed exclusively to the identification and
22 extraction of data within the scope of this warrant.

23 22.    Based on the foregoing, identifying and extracting data subject to seizure pursuant
24 to this warrant may require a range of data analysis techniques, including manual review,
25 and, consequently, may take weeks or months. The personnel conducting the identification
26 and extraction of data will complete the analysis within ninety (90) days, absent further
27 application to this court.

28 //

## CONCLUSION

23.    In this case, based on the significant weight and value of the narcotics and the method of its concealment within the vehicle in a modified non-factory compartment, indicating that WALDROP likely worked with others and needed to communicate with them, as well as my training and experience, I respectfully submit that there is probable cause to believe that evidence of violations of Title 21, United States Code, Sections 952 and 960 may be located on Target Telephone described in Attachment A.  I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

Timothy O'Sullivan
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me
this _4_ day of October, 2017

THE HONORABLE NITA L. STORMES
UNITED STATES MAGISTRATE JUDGE

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

A Black Samsung Cellular Phone, FCC ID A3LSMJ327T, IMEI 355603/08/881586/7, seized from Brian Carl WALDROP on July 10, 2017 at the San Ysidro, California, Port of Entry. It is currently in the possession of the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, Special Agent in Charge, San Diego California, 92101.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the Target Telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone.  The seizure and search of the Target Telephone will be conducted in accordance with the "Procedure for Electronically Stored Information as to the Target Telephone" section of the affidavit submitted in support of the warrant.

The evidence to be seized from the Target Telephone described in Attachment A will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period from January 1, 2017 to July 10, 2017:

1.      Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to smuggle narcotics from Mexico to the United States and within the United States;

    b. tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to smuggle narcotics from Mexico to the United States and within the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in smuggling narcotics from Mexico to the United States and within the United States;

    d. tending to identify travel to or presence at locations involved in the smuggling of narcotics from Mexico to the United States and within the United States, such as stash houses, load houses, or delivery points.

    e. tending to identify the user of, or persons with control over or access to, the subject phones; or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.